**UNITED STATES of America, Plaintiff,**

v.

**Donald E. DISTLER, et al., Defendants.**

**Civ. A. Nos. 88–0200–L(J), 88–0201–L(J).**

United States District Court,
W.D. Kentucky,
Louisville Division.

Feb. 9, 1990.

As Amended Nunc Pro Tunc
Aug. 13, 1990.

Jon A. Mueller, Atty., Environmental Enforcement Section, Land and Natural Resources Div., Washington, D.C., Richard A. Dennis, Asst. U.S. Atty., Louisville, Ky., for plaintiff U.S.

John Sebaly, James Dyer, Jesse Beasley, Sebaly, Shillito and Dyer, Dayton, Ohio, Thomas A. Hoy, Woodward, Hobson & Fulton, Louisville, Ky., for defendant Angell Mfg. Corp.

## MEMORANDUM OPINION

JOHNSTONE, Chief Judge.

The current issue before the court is whether a successor corporation is liable for response costs under Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). 42 U.S.C.S. § 9607 (1989). Defendant Angell Manufacturing *Corporation* has moved under Rule 12 to dismiss the government's claim for response costs which were incurred in cleaning up two hazardous waste sites in Jefferson County and Hardin County, Kentucky. Because the court finds that a valid claim has been stated against Angell as a successor corporation the motion is DENIED.

*Factual Background*

Angell is in certain respects a successor of the Angell Manufacturing *Company* which, according to the government, contracted in 1976 to have hazardous substances transported for disposal at one or both of the two sites. For clarity, the

court will refer to the first Angell as "Angex" and the second as "Angell."

According to the defendant, Angex was formed in 1976 by a group of professional corporate liquidators to purchase the Angell Manufacturing Division of the Lamson & Sessions Corporation. This division primarily manufactured metallic name plates for producers of consumer electronic products. As a result of a decline in the domestic electronics industry during the previous ten years, the division had suffered from a sharp decrease in sales.

After purchasing the company, Angex continued operating the name plate business although with minimal effort either to improve it or change the focus of the product line. Angex's unwillingness to invest significant amounts of capital in the business was consistent with their intent to derive as much profit from the business as possible and then liquidate it lock, stock and barrel.

In April of 1979 three key employees of Angex, Richard Anglin, General Manager of the company in Dayton, William Tatum, plant manager at the Lebanon, Kentucky plant, and Robert Paus, General Sales Manager decided to purchase the company and operate it themselves. To that end, the three formed "Ang Corporation" as a vehicle for purchasing Angex's assets. Anglin, Tatum and Paus were the only shareholders of Ang, each holding a third of the corporate stock. None of them had owned any Angex stock.

Nine days after Ang was formed, it entered into an asset purchase agreement by which it acquired substantially all of the assets of Angex including the equipment, inventory, and physical plants. From the record it appears that the only significant asset not purchased was the headquarters facility which the company nevertheless continued to occupy under a lease agreement. By the express terms of the agreement, Angell assumed only the liabilities specified in the contract.

Shortly after the sale, Angex dissolved and distributed its assets to its shareholders. Ang then changed its name to Angell Manufacturing Corporation. None of Angex's shareholders or directors were or became shareholders or directors of Angell. Anglin served as president of the new corporation. Tatum and Paus essentially continued to perform their same jobs and also served as Angell Vice Presidents.

Following the transfer, on Angell letterhead, the new company issued a formal announcement of the change of ownership.

A newly formed corporation has acquired substantially all assets of the Angell Manufacturing Co. The new corporation was organized by Richard D. Anglin, Robert L. Paus and William L. Tatum. The company will operate under the Angell name and there are no immediate plans for any changes. Principals of the corporation have been active as management of the former company for several years and will continue to function in same areas of responsibility.

With the exception of three managers, the corporation retained the same employees, continued to produce the same products, serve the same customers and hold itself out to the public as the same company. To the outside world Angell appeared the same after the transaction as before.

*Liability under CERCLA Section 107*

■ Under Section 107(a)(3) of CERCLA, persons who have contracted or otherwise arranged for the disposal, treatment or transportation of hazardous substances are jointly and severally liable for the costs of cleaning up the disposal site should there be a release or threatened release. 42 U.S. C.S. § 9607(a)(3).[1]

The term "person" is defined in Section 101 of the Act to include "corporations," however, the statute is silent as to whether

---

**1.** Section 107(a)(3) describes such "generator defendants" as persons:

    (3) ... who by contract agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances,....

successor corporations may be liable. Of the handful of courts which have considered the applicability of the doctrine of successor liability in CERCLA cases, all but one, *The Anspec Company, Inc. v. Johnson Controls, Inc.*, 734 F.Supp. 793 (E.D. Mich.1989), have held the doctrine applicable.

A leading case in this area is *Smith Land and Improvement Corp. v. Celotex Corp.*, 851 F.2d 86 (3d Cir.1988), *cert. denied*, 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989).[2] *Smith Land* involved a suit for contribution against a successor corporation whose predecessor had disposed of a hazardous substance on property which the plaintiff had subsequently purchased and been ordered to clean up. The Court of Appeals for the Third Circuit held the doctrine of successor liability applicable. Finding the statute ambiguous, the court reasoned that "Congress expected for the courts to develop federal common law to supplement the statute." 851 F.2d at 91. The court noted that the underlying rationale of the doctrine was to prevent responsible parties from evading liabilities through mere changes in ownership and that courts should apply it in the CERCLA context. *Id.*

The Third Circuit's decision was rejected by the District Court for the Eastern District of Michigan in the *Anspec* case. The *Anspec* court declined to apply the successor liability doctrine. Unlike the Third Circuit, the district court found the language of Section 107 to be unambiguous and concluded that development of federal common law in that area of CERCLA was both unnecessary and inappropriate.

■ For the following reasons, this court will follow the *Smith Land* holding and decline to follow the *Anspec* case. First, the court concludes that Congress intended the courts to develop common law to supplement Sections 107 and 101 which are ambiguous insofar as they define "persons" and "corporations" liable for re-

sponse costs. The statute does not define "corporation" and the court finds it unlikely that Congress intended to abrogate the common law doctrine of successor liability implicitly. CERCLA is remedial in nature and the court should not "interpret section [107(a)] in any way that apparently frustrates the statute's goals, in the absence of a specific congressional intent otherwise." *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1045 (2d Cir.1985), *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1081 (1st Cir.1986).

Second, the court agrees with the *Smith Land* opinion that the common law doctrine of successor liability fulfills CERCLA's remedial purpose by making responsible parties rather than taxpayers pay for hazardous waste clean-up. Interpreting the statute to preserve the doctrine of successor liability furthers the congressional purpose of holding responsible parties liable for their actions.

*Application of Successor Liability under CERCLA*

Having decided that the doctrine of successor liability applies under CERCLA Section 107, the court must determine whether the government has stated a claim against Angell under the doctrine. In making this decision the court must first determine which of several versions of the doctrine are applicable under the Act.

*The Traditional Rule*

■ The traditional rule is that a corporation which purchases the assets of another corporation does not succeed to the liabilities of the transferor, with four well-recognized exceptions: (1) where there is an express or implied assumption of liability; (2) where the transaction amounts to a consolidation or merger; (3) where the transferee corporation is a mere continuation of the transferor; or (4) where the transaction was fraudulent or lacking in good faith. *Conn v. Fales Div. of Mathewson Corp.*, 835 F.2d 145, 146 (6th Cir.1987); *Philadelphia Elec. Co. v. Hercules, Inc.*,

**2.** The *Smith Land* case has been followed by three other courts: *In re Acushnet River & New Bedford Harbor Proceedings Re Alleged PCB Pollution*, 712 F.Supp. 1010 (D.Mass.1989); *United States v. Carolina Transformer Co., Inc.*, 739 F.Supp. 1030 (E.D.N.C.1989); *Kelley v. Thomas Solvent Co.*, No. K86–164/86–167 (W.D.Mich. Feb. 2, 1988).

762 F.2d 303, 308–09 (3d Cir.1985), *cert. denied,* 474 U.S. 980, 106 S.Ct. 384, 88 L.Ed.2d 337 (1985).

The government contends that Angell is liable under the "mere continuation" exception or under a broadened version of that exception known as the "substantial continuity" or "continuity of enterprise" exception. Specifically, the government claims that substantial continuity exists between the two companies and that because of this continuity Angell is liable under CERCLA in the same capacity as Angex. Angell argues that the court should apply the traditional rule and that it is not liable under any of the rule's exceptions.

The application of the doctrine of successor liability in a CERCLA case presents the court with a case of first impression.[3] The holding in *Smith Land* was confined to the issue of whether the doctrine of successor liability applies in the CERCLA context. The court did not reach the issue of which version of the doctrine should be applied. In arguing for application of the traditional test, Angell relies on the following suggestion offered by the Third Circuit to the trial court in the *Smith Land* case:

> [T]he district court must consider national uniformity; otherwise, CERCLA aims may be evaded easily by a responsible party's choice to arrange a merger or consolidation under the laws of particular states which unduly restrict successor liability. *The general doctrine of successor liability in operation in most states should guide the court's decision rather than the excessively narrow statutes which might apply in only a few states.* (Emphasis added).

851 F.2d at 92. Angell implies that the traditional doctrine is in operation in most states and that the Third Circuit intended it to be applied in CERCLA cases.

The implication asserted by Angell may perhaps be drawn from the cited passage, however, the court did not identify and it is not clear what type of "narrow statutes" the court felt might be more restrictive of successor liability than the traditional doctrine. The doctrine of successor liability has its roots in the common law and the court has been directed to no statutory authority of the type which may have concerned the *Smith* court. Even assuming the court meant "narrow versions" of the doctrine of successor liability, its message is unclear; the majority of jurisdictions apply the traditional four exceptions which are "narrower" than more modern versions which as yet have been accepted by only a minority of states.

Because the *Smith Land* court did not decide which doctrine of successor liability should be applied in CERCLA cases, any search for guidance along those lines is likely to encounter difficulty. Nevertheless, the following excerpt from the *Smith Land* holding provides a more instructive discussion of the factors to be considered when applying the doctrine under CERCLA.

> The concerns that have led to a corporation's common law liability ... for the torts of its predecessor are equally applicable to the assessment of responsibility for clean-up costs under CERCLA.
>
> The Act views response liability as a remedial, rather than a punitive measure whose primary aim is to correct the hazardous condition. Just as there is liability for ordinary torts or contractual claims, the obligation to take necessary steps to protect the public should be imposed on a successor corporation.
>
> \*  \*  \*  \*  \*  \*
>
> Expenses can be borne by two sources: the entities which had a specific role in the production or continuation of the haz-

3. Although one other district court has found the "substantial continuity" or "continuity of enterprise" exception applicable, its reasons for doing so are not clear. *United States v. Carolina Transformer Co., Inc.,* 739 F.Supp. 1030 (E.D.N. C.1989). The case upon which the *Carolina Transformer* court relied in deciding to apply the substantial continuity test, *Oner II v. EPA,*

597 F.2d 184 (9th Cir.1979) involved a situation where the president of the successor corporation had served in the same office for the predecessor and had notice of the liability. Here, Angell could not have had notice of the CERCLA liability as the Act was not passed until after the transfer.

ardous condition, or the taxpayers through federal funds. CERCLA leaves no doubt that Congress intended the burden to fall on the latter only when the responsible parties lacked the wherewithal to meet their obligations.

*Congressional intent supports the conclusion that, when choosing between the taxpayers or a successor corporation, the successor should bear the cost. Benefits from use of the pollutant as well as savings resulting from the failure to use non-hazardous disposal methods inured to the original corporation, its successors, and their respective stockholders and accrued only indirectly, if at all, to the general public. We believe it in line with the thrust of the legislation to permit—if not require—successor liability under traditional concepts.*

851 F.2d at 91–92; (Emphasis added). *See also In re Acushnet River & New Bedford Harbor Proceedings Re Alleged PCB Pollution,* 712 F.Supp. 1010, 1013–14 (D.Mass. 1989).

■ The overall message this court gleans from the *Smith Land* case is that courts applying the doctrine of successor liability in CERCLA cases are to apply it in such a fashion as to further the goals of the Act whether that be done by applying the traditional rule or some variation.[4]

Angell was formed by three former key employees of Angex who acquired its assets in a leveraged asset purchase. No Angell stock was transferred to Angex stockholders and no officers of Angex became officers of Angell. Were the court to apply the traditional exception to the An-

gex–Angell transfer, Angell would not be liable as there is no identity of stockholders or directors; only the corporation's management remained essentially identical.

■ Just as the traditional doctrine's application in the area of products liability has lead some courts to loosen the doctrine's requirements to harmonize it with the theory of strict products liability, this court believes that strict adherence to the parochial requirements in CERCLA cases may in some instances conflict with the remedial policies underlying the statute as articulated by the *Smith Land* decision above. Although a majority of jurisdictions may presently adhere to such constructions of the doctrine, where to do so would conflict with Congressional intent, the court is bound to seek an application which avoids such conflict. *See Howard Johnson Co. v. Hotel Employees,* 417 U.S. 249, 257, 94 S.Ct. 2236, 2240, 41 L.Ed.2d 46 (1974); *Golden State Bottling Co. v. N.L.R.B.,* 414 U.S. 168, 182 fn. 5, 94 S.Ct. 414, 424 fn. 5, 38 L.Ed.2d 388 (1973).

### *Substantial Continuity Exception*

■ The government argues that Angell is liable under an expanded version of the "mere continuation" exception,[5] namely the "substantial continuity" or "continuity of enterprise" exception. Under this approach, courts weigh a number of factors in determining whether to impose successor liability. Among the factors considered are whether the successor: (1) retains the same employees; (2) retains the same supervisory personnel; (3) retains the same production facilities in the same location; (4) continues producing the same products;

---

**4.** While the court does suggest the propriety of applying the doctrine under "traditional concepts," the court also mentions that improper disposal may inure to the benefit of both corporations and their "respective shareholders" indicating that the court did not view the traditional requirement of shareholder identity as absolute.

Furthermore, the opinion taken as a whole supports the rationale of taking a common sense rather than an overly restricted look at the corporate transfer. The court's use of the word "traditional" fails to negate the rationale of the rest of the passage that courts should apply the doctrine so as to further CERCLA's

policy of holding responsible parties liable. It would strain the court's holding to give undue emphasis to an isolated word in an isolated sentence.

**5.** The government does not contend that the court should apply the "product line" exception devised by the California Supreme Court in *Ray v. Alad Corp.,* 127 Cal Rptr. 817, 821 (Cal.App. 1977) and since followed by a number of other courts. *See Ramirez v. Amsted Industries, Inc.,* 86 N.J. 332, 431 A.2d 811 (1981) and *Dawjeko v. Jorgensen Steel Co.,* 290 Pa.Super. 15, 434 A.2d 106 (1981).

(5) retains the same name; (6) maintains continuity of assets and general business operations; and (7) whether the successor holds itself out to the public as the continuation of the previous corporation. *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 175 (5th Cir.1985); *Cyr v. B. Offen & Co., Inc.*, 501 F.2d 1145 (1st Cir.1974) and *Turner v. Bituminous Casualty Co.*, 397 Mich. 406, 244 N.W.2d 873 (1976).

The Supreme Court has used the substantial continuity approach when determining the liabilities of successor corporations in labor disputes. *See Fall River Dyeing & Finishing Corp. v. N.L.R.B.*, 482 U.S. 27, 107 S.Ct. 2225, 96 L.Ed.2d 22 (1987) and *Howard Johnson* and *Golden State Bottling, supra.* The court finds that the reasons supporting this theory's application in products liability cases are equally applicable in the current context.

In the words of the California Supreme Court in *Ray v. Alad Corp.*, 55 Cal.App.3d 855, 127 Cal Rptr. 817, 821 (1977) where the court refused to be bound by the strict requirements of the traditional doctrine:

> this case has nothing to do with … the technical differences between a sale of assets …, mergers, consolidation … and the many other ways by which ownership of the [Angell] manufacturing enterprise could have been transferred from [Angex to Angell].
> The issue is, rather, one of [CERCLA law]: does a manufacturer's responsibility for its [hazardous waste] survive a change in ownership, where the manufacturing business, as such, maintains its identity and continues to operate as before at the same old stand.

127 Cal.Rptr. 819–820.

Applying the substantial continuity exception to the present case, the court has no difficulty in finding Angell to be liable as Angex's successor. The company retained essentially the same employees and management. The company operated out of the same physical facilities and produced the same product line after the transfer as before. The company held itself out to the public as the same company, retained the same operating assets and succeeded to all liabilities necessary for the orderly transition of ownership and to prevent the interruption of the daily business operation. To permit Angell to avoid liability in this case would clearly be a victory of form over substance and contrary to congressional intent that producers of hazardous substances be held liable for improper disposal of those substances under CERCLA.

Angell has sought to make much of the change in its product line from metallic name plates to plastic trim for automobiles. The company now uses different equipment and raw materials and has some different customers. However, as the government points out, this transition occurred over a three to four year period and was in response to economic factors such as the decline of the domestic electronics industry. While the company today serves a different market, it continued to serve most of its old customers several years after the change in ownership. Considering all the other factors discussed above which indicate the virtual identity of Angex and Angell the court finds that the government has stated a claim under CERCLA. The company's change of production through a natural response to market conditions does not change the fact that at the time of transfer the companies were virtually identical. Under these circumstances Angell may have succeeded to Angex's CERCLA liability.