UNITED STATES of America

v.

ATLAS MINERALS AND CHEMICALS, INC., et al.

v.

R. Emory MABRY, et al.

No. 91–5118.

United States District Court, E.D. Pennsylvania.

March 5, 1993.

Robert B. Hoffman, Reed, Smith, Shaw & Mc Clay, Harrisburg, PA.

Richard L. Guido, New York City, John W. Ubinger, Jr., Jones, Day, Reavis & Pogue, Pittsburgh, PA, for Exide Corp.

Kenneth J. Warren, Jill M. Hyman, Steven T. Miano, Manko, Gold & Katcher, Bala Cynwyd, PA, for General Elec. Co.

Catherine C. Pyune, Philadelphia, PA, for Diamond Industries, Inc.

Bart M. Beier, Miller & Beier, Pittsburgh, PA, for Garnet Electroplating Corp.

Neil Robert Bigioni, Alan V. Klein, Carl B. Everett, Saul, Ewing, Remick & Saul, Philadelphia, PA, for W.R. Grace & Co.—Conn. (Inc.).

Donald L. Van Gilder, Thompson, Somach & Vangilder, Allentown, PA, for Knopf Automotive, Inc.

Patricia A. Shaw, Eckert, Seamans, Cherin & Mellot, Pittsburgh, PA, for Lehigh Valley Hosp.

## MEMORANDUM

CAHN, District Judge.

Garnet Electroplating Corporation has moved for summary judgment pursuant to Fed.R.Civ.P. 56(c). For the reasons set forth below, the court will grant the motion.

## I. BACKGROUND

This case arises from the contamination of the Dorney Road Landfill ("the landfill"). In 1986, the Environmental Protection Agency instituted a removal action under 42 U.S.C. § 9604(a)(1)[1] and began the cleanup. In 1991, the United States filed suit against ten defendants, seeking to recover cleanup costs under 42 U.S.C. § 9607(a). The United States alleges that the defendants generated large quantities of hazardous waste that were disposed of at the landfill. In 1992, the defendants filed a third party complaint, alleging that several dozen third party defendants also generated or transported hazardous waste that was disposed of at the landfill. The third party plaintiffs ("plaintiffs") seek contribution for removal costs and anticipated remediation expenses.[2] Garnet Electroplating Corporation is one of the third party defendants.

Plaintiffs allege that from 1969 until 1972, Garnet Chemical Corporation contracted for hazardous waste disposal with Reeser's Hauling Service, which dumped the waste at the landfill. Plaintiffs further allege that Garnet Electroplating Corporation is the successor to Garnet Chemical Corporation, and is therefore liable under 42 U.S.C. § 9607(a)(3).[3]

1. This statutory provision, as well as others cited hereafter, is part of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). 42 U.S.C. § 9601 et seq.

2. The Environmental Protection Agency has ordered the defendants to complete the cleanup of the landfill. See 42 U.S.C. § 9606(a).

## II. SUMMARY JUDGMENT

When considering a motion for summary judgment, the court must draw all justifiable inferences in favor of the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). Additionally, the court may not make credibility determinations or weigh the evidence. Id. at 252, 106 S.Ct. at 2512. If the record thus construed could not lead the trier of fact to find for the non-moving party, judgment should be entered in favor of the moving party. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## III. CORPORATE ORIGINS OF GARNET ELECTROPLATING

The following facts are undisputed. Garnet Chemical was incorporated in Delaware in 1933 and dissolved on November 6, 1985. On August 5, 1985, Garnet Chemical sold virtually all its assets to Robert Williams. Williams paid $350,000 in cash for equipment, inventory, accounts receivable, real property, and good will. Garnet Chemical retained several parcels of real estate. There is no evidence that Williams had any relationship with Garnet Chemical before he began negotiations to purchase its assets. Williams assigned his rights to Lehigh Valley Plating and Chemical, Inc., a Pennsylvania corporation of which he and his wife were sole shareholders. On November 8, 1985, pursuant to terms of the asset sale, Lehigh Valley Plating assumed the corporate name of Garnet Chemical. On July 21, 1986, Garnet Chemical changed its name to Garnet Electroplating.

Before the sale, Garnet Chemical was in the chemical and electroplating business. After the sale, Garnet Electroplating ceased the production of chemicals and devoted its

3. This subsection provides that "any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person ..." shall be liable for removal and remediation costs.

resources to electroplating exclusively.[4] However, Garnet Electroplating continued to do business at the same Allentown production facility, and held itself out as the continuation of Garnet Chemical. In fact, most of its employees were former Garnet Chemical employees. As of this date, however, Garnet Electroplating is no longer doing business at the Allentown plant.

## IV. SUCCESSOR LIABILITY UNDER CERCLA

CERCLA is silent as to whether successor liability may be imposed on corporate defendants. The Third Circuit Court of Appeals has held that "Congress intended to impose successor liability on corporations which either have merged with or have consolidated with a corporation that is a responsible party under the Act." *Smith Land & Improvement Corp. v. Celotex Corp.*, 851 F.2d 86, 92 (3d Cir.1988), *cert. denied*, 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989). The *Smith* court did not decide whether successor liability applies under CERCLA when a corporation sells its assets rather than its stock. More recent decisions in other jurisdictions have addressed this issue.[5]

▪ Under settled rules of successor liability, asset purchasers are not liable as successors unless (1) the purchasing corporation expressly or impliedly agrees to assume liability; (2) the transaction amounts to a "de facto" merger or consolidation; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction was fraudulently entered into in order to escape liability. *United States v. Mexico Feed and Seed Co.*, 980 F.2d 478, 487 (8th Cir.1992); *United States v. Carolina Transformer Co.*, 978 F.2d 832, 838 (4th Cir.1992); *Louisiana–Pacific Corp. v. Asarco, Inc.*, 909 F.2d 1260, 1263 (9th Cir.1990). Plaintiffs sole argument is that Garnet Electroplating

is liable under the third exception, as a mere continuation of Garnet Chemical. Accordingly, the court will not address the other three exceptions.

▪ The traditional rule is that the purchaser is a "mere continuation" of the seller when there is an identity of stock, stockholders and directors. *Mexico Feed*, 980 F.2d at 487; *Soo Line Railroad Co. v. B.J. Carney & Co.*, 797 F.Supp. 1472, 1483 (D.Minn.1992); *Sylvester Brothers Development Co. v. Burlington Northern Railroad*, 772 F.Supp. 443, 449 (D.Minn.1990). Under this test, Garnet Electroplating must prevail because there is no evidence that such identity exists. However, plaintiffs note quite correctly that some courts have recognized the "continuity of enterprise" theory,[6] which expands the scope of the "mere continuation" exception. *See Carolina Transformer*, 978 F.2d 832, 838; *Allied Corporation v. Acme Solvents Reclaiming, Inc.*, 812 F.Supp. 124, 129 (N.D.Ill.1993); *United States v. Western Processing Co.*, 751 F.Supp. 902, 905 (W.D.Wash.1990); *United States v. Distler*, 741 F.Supp. 637, 642 (W.D.Ky.1990). Factors to be considered under the "continuity of enterprise" approach include whether or not the purchaser (1) retains the same employees and production facilities; (2) produces the same products; (3) maintains the same assets and business operations; (4) retains the same business name; and (5) holds itself out to the public as a continuation of the previous enterprise. *Allied Corporation*, 812 F.Supp. at 129 n. 5. Plaintiffs urge the court to adopt this more expansive view of successor liability. The courts have recognized that this more flexible approach may prevent responsible parties from using corporate formalities to escape liability. In many instances, the purchaser has knowledge of the seller's dangerous activities and is in the best position to assess risk.

---

4. Mr. Williams testified that he changed the corporate name so that it would more accurately reflect the company's line of business. Deposition transcript at 22.

5. The court must decide this question as a matter of federal common law. *See United States v. Mexico Feed and Seed Co.*, 980 F.2d 478, 487 n. 9 (8th Cir.1992); *United States v. Distler*, 741

F.Supp. 637, 640 (W.D.Ky.1990). *But see Anspec Co. v. Johnson Controls, Inc.*, 922 F.2d 1240, 1248 (6th Cir.1991) (holding that state law governs application of successor liability to CERCLA defendants).

6. Some courts refer to this theory as the "substantial continuity" approach.

■ The court finds the "continuity of enterprise" theory inapplicable to the facts of this case. It was never intended that this new approach would replace the traditional test. Instead, the "continuity of enterprise" theory should be applied only when the application of traditional corporate law principles would frustrate the remedial goals of CERCLA, namely to have *responsible* parties contribute to the cleanup costs. *See Distler,* 741 F.Supp. at 642 (strict adherence to traditional doctrine may in *some* instances frustrate remedial goals of CERCLA).

The "continuity of enterprise" theory has only been invoked in limited circumstances. For example, in *Carolina Transformer,* the children of the owner of the selling corporation were the sole shareholders of the purchasing corporation and knew of "emerging environmental problems." 978 F.2d at 838. After the asset sale, the father retained substantial control over the operations of the purchasing corporation. The district court granted summary judgment for the plaintiff. The Fourth Circuit Court of Appeals affirmed, holding that the sale was "part of an effort to continue the business in all material respects yet avoid the environmental liability arising from [the contamination of a landfill]". *Id.* at 841.

In *Distler,* three high-ranking managerial employees incorporated to buy virtually all the assets of the employer corporation. They did so with full knowledge that three years earlier their employer had contracted to have hazardous waste transported to the landfill in question. The district court denied the defendant's motion to dismiss on the grounds that successor liability may lie even if there is not an identity of ownership. Although the court decided that the plaintiff had stated a claim, it did not reach the issue of whether the purchasing corporation was in fact liable.

■ Several courts have found the "continuity of enterprise" theory inapplicable to the facts of particular CERCLA cases. In *ASARCO,* the Ninth Circuit Court of Appeals affirmed the grant of summary judgment in favor of a third party defendant, holding that the "continuity of enterprise" theory was inapplicable. 909 F.2d at 1265.

The court observed that the third party defendant had no actual notice that its predecessor was a potentially responsible party. In *Mexico Feed,* the Eighth Circuit Court of Appeals reversed the grant of summary judgment against a corporate defendant, where the decision below had rested upon the "continuity of enterprise" theory. The Eighth Circuit held that "as in *ASARCO,* [defendant] had no actual notice. It had no knowledge of the offending tanks nor had [the predecessor] been identified as a potentially responsible party for CERCLA purposes. . . ." *Id.* at 489. The Court added that:

Unlike *Distler* and *Carolina Transformer* [both discussed *supra* ], the asset purchase transaction was between two competitors, not a cozy deal where responsible parties merely changed the form of ownership yet in substance remained the same, nor one where the actual managers of a corporation took over its ownership with full knowledge of its past practices. Nor is this a case where a purchasing corporation either in collusion with the seller, or independently, bought only "clean" assets, and knowingly left "dirty assets" behind with an insufficient asset pool to cover any potential liability. Nor is this a case of willful blindness.

*Id.* at 489–90. Under this interpretation, the "continuity of enterprise" exception is designed to prevent strategic behavior by corporate actors who know of or anticipate CERCLA problems. Accordingly, where as in the instant case no such conduct is alleged, it ought not be applied.

One of the most recent cases to discuss the "continuity of enterprise" exception is *Allied Corporation,* 812 F.Supp. 124. The district court held that the exception applies "only when it has been shown that the asset purchaser has knowledge of the potential liability and responsibility for that liability." *Id.* at 129 n. 5 (citation omitted). The court also observed that "[t]he cases imposing 'substantial continuation' successorship have correctly focused on preventing those *responsible* for the wastes from evading liability through the structure of subsequent transactions." *Id.* at 129 (emphasis added). The court

granted the defendant's motion for summary judgment after determining that "the plaintiffs [had] not set forth facts showing that [the defendant] had knowledge of the potential environmental liability or was in some way responsible for that liability...." *Id.*

In *City Environmental, Inc. v. U.S. Chemical Co.*, 814 F.Supp. 624 (E.D.Mich.1993), the district court entered a declaratory judgment that the plaintiff was not liable under CERCLA for the corporation's pre-asset sale disposal of hazardous waste. As in the instant case, the sale involved most, but not all, of the selling corporation's assets. The selling corporation retained its accounts receivable, all cash on hand and some real estate. *Id.* at 626–27. The selling corporation did nothing but collect accounts receivable and defend itself in court after the asset sale. *Id.* at 630. The defendant continued in the same line of business at the same facility with all but one of the same employees. *Id.* at 630 n. 20. Nevertheless, the court held that the "continuity of enterprise" exception did not apply. The court noted that:

> In both *Carolina Transformer* and *Distler*, although there was no 'continuity of shareholders' in either case, both actions involved purchasers which had substantial 'ties' to the seller corporations. In *Carolina Transformer*, the purchasing corporation continued the business of the seller corporation. More importantly, however, the children of the owner of the seller corporation owned the purchasing corporation. Indeed, their father continued to effectively control the new business just as he did with the predecessor-seller. Similarly, in *Distler*, three of the seller's top-level employees formed the purchaser business for he express purpose of buying out their former employer. As the Eighth Circuit held in *Mexico Feed*, it was those "continuity" ties that led the courts in *Car-*

*olina Transformer* and *Distler* to find sufficient "continuity of the enterprise" to impose successor liability on the purchasing corporations so that the intent of Congress that those responsible for hazardous waste would not escape liability.

*Id.* at 638–39. Although the court decided this difficult question under Michigan law[7], its analysis of the recent case law is particularly instructive. It demonstrates that the "continuity of enterprise" exception should supplant the traditional rule only when the purchasing corporation has "substantial ties" to the selling corporation.

This conclusion is bolstered by the Third Circuit Court of Appeals' treatment of the same issue in the products liability context. *See Polius v. Clark Equipment Co.*, 802 F.2d 75 (3d Cir.1986). In *Polius*, the court rejected the "continuity of enterprise" theory as "an ill-considered extension of liability to an entity having no causal relationship with the harm." *Id.* at 82.[8] Judge Weis' critique of the "continuity of enterprise" theory applies with some force in CERCLA cases. At a minimum, it suggests that the theory ought to be applied only when there is a causal link between the CERCLA defendant and the environmental harm.

## V. CONCLUSION

The court finds *Mexico Feed, AS-ARCO, Allied Corp.*, and *City Environmental* persuasive, insofar as the they limit the applicability of the "continuity of enterprise" exception. The court also finds that *Distler* and *Carolina Transformer* are distinguishable on the facts. Given that Garnet Chemical ceased its transfer of waste to the Dorney Landfill in 1972, and that Mr. Williams had no ties to Garnet Chemical, it cannot be said that the 1985 asset sale renders Garnet Electroplating a responsible party.[9] Plaintiffs

---

7. The District Court was obliged to follow *Anspec*, 922 F.2d at 1248, which held that state law governs the application of successor liability in CERCLA cases.

8. The court was interpreting Virgin Islands law, but because the Restatement was silent, the court applied the law which represented "the better approach." *Id.* at 80.

9. Garnet Electroplating argues that successor corporations may not be held liable under the "continuity of enterprise" exception if their predecessors were merely "arrangers" under § 9607(a)(3), rather than "owners" or "operators" under § 9607(a)(2). However, the court has found no legal basis for the proposition that successors to "arrangers" are somehow less culpable. Instead, the critical inquiry is whether the purchasing corporation and selling corpora-

have produced no evidence that Mr. Williams knew of or was responsible for the transfer of hazardous waste to the landfill. Accordingly, the court will apply the traditional exception, under which the party seeking to impose successor liability must establish an identity of stockholders and directors. It is undisputed that no such identity exists. Therefore, the court must grant Garnet Electroplating's motion and enter judgment accordingly. An appropriate order follows.

### ORDER

AND NOW, this 5th day of March, 1993, upon consideration of Garnet Electroplating Corporation's Motion for Summary Judgment, for the reasons set forth in the accompanying Memorandum, IT IS ORDERED that the Motion is GRANTED. Judgment is entered against the third party plaintiffs and in favor of Garnet Electroplating.

tion have substantial ties, including shared knowledge of potential CERCLA liability.