UNITED STATES of America, Plaintiff,

v.

**VERMONT AMERICAN CORP., Defendant.**

No. 1:93–CV–912.

United States District Court,
W.D. Michigan,
Southern Division.

Sept. 29, 1994.

W. Francesca Ferguson, Asst. U.S. Atty., Michael H. Dettmer, U.S. Atty., Grand Rapids, MI, Elliot M. Rockler, Environmental Enforcement Section, Environment & Natural Resources Div., U.S. Dept. of Justice, Washington, DC, for the U.S.

Louis M. Rundio, Jr., Robert J. Slobig, Linda M. Bullen, McDermott, Will & Emery, Chicago, IL, for Vermont American Corp.

Steven C. Kohl, Howard & Howard, P.C., Bloomfield Hills, MI, for Atkinson Mfg. Co., Jack L. Rasmussen.

## OPINION

ROBERT HOLMES BELL, District Judge.

Plaintiff United States of America filed this action pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9607, to recover unreimbursed costs incurred in response to the release or threat of release of hazardous substances from the Mason County Landfill. The government alleges that Atkinson Manufacturing Company disposed of hazardous wastes at the landfill from 1971 to 1975, and that Defendant Vermont American Corporation is the successor to the liabilities of Atkinson.

This matter is currently before the Court on Defendant Vermont American's motion for summary judgment.

## I.

The background facts of the case are largely undisputed. During the relevant time period (1961–1980) Atkinson was a closely held Michigan corporation owned by Jack Rasmussen and his three sons. Atkinson had an industrial facility in Ludington where it manufactured metal tool boxes and closet accessories. Waste generated from Atkinson's electroplating and painting operations was disposed of at the Mason County Landfill from 1971 to 1975. The landfill closed in 1978.

On March 10, 1980, Vermont American purchased the assets of Atkinson for $3 million and the assumption of certain liabilities. On March 21, 1980, Vermont American incorporated Atkinson Mfg. Co. ("AMC"), a Delaware corporation which was a wholly owned subsidiary of Vermont American. Vermont American assigned its rights and liabilities involving the Atkinson purchase to AMC on March 31, 1980.

AMC continued the business of Atkinson under the same name, at the same location, and with essentially the same customers, suppliers and employees. AMC employed Jack Rasmussen as President or General Manager of AMC for less than a year, and as a consultant until March 31, 1985. There was no identity of shareholders, or directors between Atkinson and either Vermont American or AMC.

CERCLA was enacted in December 1980. In 1982 the Mason County Landfill was placed on the National Priority List. In 1986 the United States Environmental Protection Agency began a Remedial Investigation and Feasibility Study to investigate and determine the nature and extent of contamination at the Mason County Landfill. The government first notified Vermont American about its potential liability in connection with the Mason county Landfill in 1988. As of March 1, 1993, the government has incurred at least $1,800,000 in response costs.

## II.

Defendant Vermont American has moved for summary judgment on the basis that it is not, as a matter of law, the successor to the CERCLA liabilities of Atkinson.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). If Defendants carry their burden of showing there is an absence of evidence to support a claim then Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). The mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id. See generally, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476–80 (6th Cir.1989).

■ At oral argument the attorney for the government stated that the government needed more opportunity to determine what Vermont American or Jack Rasmussen knew about liability for cleanup costs at Mason County Landfill, and to determine the intention of the parties to the Assumption Agreement.

The case management order dated January 24, 1994, set a discovery cut off date of March 1, 1994. To date the government has not filed a motion for extension of discovery. Neither has the government complied with the requirements of Rule 56(f) to present by affidavit the reasons for its inability to present facts essential to justify its opposition to the motion. *Klepper v. First American*

*Bank*, 916 F.2d 337, 343 (6th Cir.1990); *Emmons v. McLaughlin*, 874 F.2d 351, 357 (6th Cir.1989).

Because the government's request for further discovery is untimely and fails to satisfy the requirements of Rule 56(f), the Court denies the request for further discovery and deems this motion ripe for decision.

## III.

■ Because of its remedial nature, the provisions of CERCLA are construed broadly to avoid frustrating the legislative purposes. *Anspec Co. v. Johnson Controls, Inc.*, 922 F.2d 1240, 1247 (6th Cir.1991). Thus, the Sixth Circuit has determined that successor corporations are within the description of entities that are potentially liable under CERCLA for cleanup costs. *Id.* at 1245. In *Anspec* the Sixth Circuit looked to state law for the definition of a successor corporation. *Id.* at 1244–45. *But see United States v. Mexico Feed and Seed Co.*, 980 F.2d 478, 487 n. 9 (8th Cir.1992); *United States v. Carolina Transformer Co.*, 978 F.2d 832, 837 (4th Cir. 1992); *Louisiana–Pacific Corp. v. Asarco, Inc.*, 909 F.2d 1260, 1263 (9th Cir.1990); *Smith Land & Improvement Corp. v. Celotex Corp.*, 851 F.2d 86, 91 (3rd Cir.1988), *cert denied*, 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989) (CERCLA successor liability to be determined by federal common law).

■ The traditional rule of successor liability under Michigan law is that a purchaser of another corporation's assets does not become responsible for the seller's liabilities, except under the following circumstances:

1. where the purchaser expressly or impliedly agrees to assume the seller's liabilities;

2. where the transaction amounts to a consolidation or merger;

3. where the purchasing corporation was a mere continuation or reincarnation of the seller corporation; or

4. where the transaction was entered into fraudulently, in order to escape liability.

*Turner v. Bituminous Casualty Co.*, 397 Mich. 406, 417 n. 3, 244 N.W.2d 873; (1976);

*City Environmental, Inc. v. U.S. Chemical Co.*, 814 F.Supp. 624, 634 (E.D.Mich.1993).

In this case there is no allegation that Vermont American's purchase of Atkinson's assets amounted to a consolidation or merger. Neither is there any allegation that the asset purchase involved fraud or was for the purpose of improperly evading any Mason County Landfill liability. The government seeks to hold Vermont America liable under the assumption of liabilities and the mere continuation exceptions to the general rule of non-liability.

In connection with the purchase of Atkinson's assets, Vermont American signed an Assumption Agreement, under which Vermont American agreed to assume:

(i) All of the debts, obligations, and liabilities of the Seller reflected or reserved against on the December 31, 1979 balance sheet ... or are otherwise disclosed in the Disclosure Letter....

(ii) All additional debts, obligations, and liabilities of the Seller, **whether or not matured and whether or not contingent, existing on the Closing Date** ... and incurred by Seller in the ordinary course of business or as otherwise incurred by the Seller in consonance with the provisions of Section 3 of the Agreement since December 31, 1979.

¶ 1 (emphasis added). Under ¶ 3 the Purchaser does **not** assume:

(iii) Any liability ... which is not set forth in the Agreement ... which would have been set forth therein had all the facts with respect thereto been known on the date thereof, regardless of when said facts became or become known.

■ The government contends there is a question of fact as to whether CERCLA liability was a contingent or not yet matured liability which existed on the closing date and which was incurred in the ordinary course of business. ¶ 1(ii). The Court disagrees. CERCLA was not enacted until 8 months after the sale, the Mason County Landfill was not placed on the National Priority List until 1982, and Vermont American was not notified of its potential liability until 1988. Under these circumstances the Court finds as a matter of law that there is no question that the CERCLA liability was not a liability that existed on the closing date. Furthermore, the liability is clearly one which would have been set forth in the Assumption Agreement had all the facts with respect thereto been known when the Assumption Agreement was signed. There is no question of fact that the CERCLA liability was not assumed under the Assumption Agreement.

■ The government's alternative theory on which to base liability is that the purchasing corporation was a "mere continuation" of Atkinson. There is no dispute that under the traditional "mere continuation" exception there must be a common identity of officers, directors and shareholders between selling and purchasing corporations. *Kelley v. Thomas Solvent Co.*, 725 F.Supp. 1446, 1458 (W.D.Mich.1988); *City Environmental*, 814 F.Supp. at 635. There is also no dispute that there was no identity of shareholders or directors between Atkinson and Vermont American or between Atkinson and AMC. Nevertheless, the government contends that the "mere continuation" exception does apply to this case because it has been expanded under Michigan law to eliminate the identity of shareholders requirement.

The government relies on the adoption by the Michigan Supreme Court of the "continuity of enterprise" doctrine in *Turner v. Bituminous Casualty Co.*, 397 Mich. 406, 244 N.W.2d 873 (1976). In *Turner*, a products liability action, the Court adopted the rule that in a sale of corporate assets for cash, successor liability on the part of the purchasing corporation can be found even in the absence of a continuity of shareholders if the following three requirements are satisfied:

1. There is a continuation of the enterprise of the seller corporation, so that there is a continuity of management, personnel, physical location, asset, and general business operations;

2. The seller corporation ceases its ordinary business operations, liquidates and dissolves as soon as legally and practically possible; and

3. The purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted

continuation of normal business operations of the seller corporation. 397 Mich. at 430, 244 N.W.2d 873. This is known as the "continuity of the enterprise" or "substantial continuity" exception to asset purchase liability.

Defendant contends that Michigan courts would not extend the application of the "continuity of enterprise" doctrine beyond the field of products liability. No Michigan state court has applied the "continuity of enterprise" doctrine in a CERCLA case. However, both the Eastern and Western Districts of Michigan have found this doctrine applicable to CERCLA cases. In *City Environmental*, Judge Rosen found that "the 'substantial continuity a/k/a continuity of enterprise' doctrine, as interpreted by the Eighth Circuit, would apply—under the appropriate factual circumstances—in CERCLA successor corporation liability actions in Michigan." 814 F.Supp. at 635 (citing *United States v. Mexico Feed and Seed Co.*, 980 F.2d 478, 487 n. 9 (8th Cir.1992)). In *Charter Township of Oshtemo v. American Cyanamid Co.*, No. 1:92–CV–843, 1994 U.S.Dist. LEXIS 2158 (W.D.Mich. January 12, 1994), Judge Enslen agreed with the court in *City Environmental* that the test from the Eighth Circuit concerning a substantial continuity test would apply to CERCLA cases in Michigan.

For purposes of this motion this Court will assume that the "continuity of enterprise" doctrine has viability in CERCLA successor corporation liability actions in Michigan. The issue remains whether this case presents the appropriate factual circumstances to warrant application of the doctrine.

In *United States v. Mexico Feed and Seed Co.*, 980 F.2d 478, 487 n. 9 (8th Cir.1992), the case followed by both *City Environmental* and *Oshtemo*, the Eighth Circuit analyzed the "substantial continuity" or "continuity of enterprise" doctrine and determined that the doctrine requires more than mere continuation of the business. The court noted that the doctrine originated with a line of Supreme Court labor relations cases where broadening the net of liability was justified by the purchasing corporation's knowledge of the pending wrongs. 980 F.2d at 487–88 (citing *Golden State Bottling Co. v. NLRB*,

414 U.S. 168, 182–85, 94 S.Ct. 414, 424–26, 38 L.Ed.2d 388 (1973)). Because the successor must have notice before liability can be imposed, its potential liability could be reflected in the purchase price or in an indemnity provision, and it could then reasonably be held responsible for remedying the problem. *Mexico Feed*, 980 F.2d at 488.

The Eighth Circuit noted that in product liability cases as well, these same factors of knowledge and responsibility have been present when "substantial continuation" liability has been imposed on an asset purchaser. *Id.* at 488. The Eighth Circuit reasoned that because CERCLA is aimed at imposing clean up costs on the parties responsible for the creation or maintenance of hazardous waste sites, in the CERCLA context "the imposition of successor liability under the 'substantial continuation' test is justified by a showing that in substance, if not in form, the successor is a responsible party." *Mexico Feed*, 980 F.2d at 488.

It is evident from the case law that courts have implicitly been following the *Mexico Feed* approach. Each time the substantial continuity test has been applied in the CERCLA context, the factors of knowledge and responsibility have been present. In *United States v. Carolina Transformer Co.*, 978 F.2d.832, 838 (4th Cir.1992), the children purchased the company from their father. According to the Eighth Circuit, "There was no colorable question of the purchaser's knowledge of and benefit from the seller's conduct for which CERCLA liability attached, or of the seller's and purchaser's practical identity." *Mexico Feed*, 980 F.2d at 489. In *United States v. Distler*, 741 F.Supp. 637 (W.D.Ky.1990), the company was purchased by three employees who virtually ran the company. "They were well aware of their employer's practices." *Mexico Feed*, 980 F.2d at 488.

Similarly, this court applied the "substantial continuity" test in *Oshtemo*, where the president and member of the board of directors of the selling corporation became one of the two owners of the successor corporation, as well as president of the successor corporation, and the Treasurer of the successor corporation was controller of the prede-

cessor. 1994 U.S.Dist. LEXIS 2158 at *7–8. More recently, the "substantial continuity test" was applied in *Atlantic Richfield Co. v. Blosenski,* 847 F.Supp. 1261, 1287 (E.D.Pa. 1994), where the undisputed facts showed that the asset purchaser knew of the potential CERCLA liability of the Blosenski corporations at the time of the purchase in 1987.

This Court agrees with Judge Rosen's determination in *City Environmental* that Michigan courts would not apply the "continuity of enterprise" doctrine without considering whether there were any substantial "ties" between the selling and purchasing corporations. 814 F.Supp. at 638.

> To not require that consideration would be to ignore the express congressional mandate that CERCLA be applied to prevent those responsible for hazardous waste from escaping liability. This Court does not find that it was Congress's intent that persons having nothing whatsoever to do with hazardous waste dumping should become liable for clean-up costs or responsibility, and the Court does not believe that the Michigan court would contravene such expressly stated congressional intent, either.

814 F.Supp. at 638.

The requirement of linking CERCLA successor liability to responsibility for the waste is consistent with Sixth Circuit case law. In *Anspec* the Court stated that the two essential purposes of CERCLA were "to provide ... the tools immediately necessary for a swift and effective response to hazardous waste sites ... [and to ensure] that those responsible for disposal of chemical poisons bear the cost and responsibility for remedying the harmful conditions they created." 922 F.2d at 1247 (emphasis added) Or, as more recently stated in *Kelley v. E.I. DuPont De Nemours and Co.,* 17 F.3d 836, 843 (6th Cir.1994), "CERCLA has two overriding objectives—cleaning up hazardous waste, and doing so at the expense of those who created it."

In *City Environmental* there was a continuation of the business at the same facility, with the same customers, using the same stationary, with many of the same employees, including one of the former directors. Notwithstanding this evidence of continuation of the business, the court held that without evidence that the purchasing corporation was somehow "responsible" for the toxic waste dumping, these facts were not sufficient to show a "substantial continuity" for the purpose of holding City Environmental responsible and liable for the cost of clean-up. 814 F.Supp. at 639.

In *United States v. Atlas Minerals and Chemicals, Inc.,* 824 F.Supp. 46 (E.D.Pa. 1993), plaintiffs alleged that Garnet Electroplating Corporation was the successor to Garnet Chemical Corporation which had dumped waste at the landfill between 1969 and 1972. It was undisputed that Garnet Chemical had sold virtually all its assets to Robert Williams in 1985, and that Williams assigned his rights to Garnet Electroplating, that Garnet Electroplating continued to do business at the same production facility, that it held itself out as the continuation of Garnet Chemical, and that most of the employees were former Garnet Chemical employees. 824 F.Supp. at 48–49.

Notwithstanding the strong indicia of continuity of the business, the court declined to apply the "continuity of enterprise" doctrine. The court reasoned that the "continuity of enterprise" doctrine should be applied "only when the application of traditional corporate law principles would frustrate the remedial goals of CERCLA, namely to have *responsible* parties contribute to the cleanup costs." 824 F.Supp. at 50 (emphasis in original). The court described the doctrine as an exception designed "to prevent strategic behavior by corporate actors who know of or anticipate CERCLA problems." *Id.* at 50. Because no such conduct had been alleged, court determined that the "continuity of enterprise" doctrine should not be applied. *Id.*

Because Garnet Chemical ceased its transfer of waste to the Dorney Landfill in 1972, and because Mr. Williams had no ties to Garnet Chemical, the court held that the 1985 asset sale did not render Garnet Electroplating a responsible party. 824 F.Supp. at 51.

The same analysis precludes a finding of successor liability in this case. Like *Atlas*

**324**

*Minerals,* this case involved a pre-CERCLA sale of assets. CERCLA was not enacted until December 1980, nine months after the purchase, and the government did not notify Atkinson or Vermont American of any potential liability with respect to the Mason County Landfill until 1988, 8 years after the purchase. There is no evidence or allegation that Vermont American ever arranged for the disposal of substances at the Mason County Landfill, and there is no allegation that the sale of assets to Vermont American was structured to avoid CERCLA problems.

The government contends there is an issue of fact as to Vermont American's actual knowledge of its potential liability. The only evidence the government has come forward with is the ambiguous statement by Jack Rasmussen that before the sale to Vermont American, he reviewed the entire operation at Atkinson with a representative of Vermont American by walking through the plant and discussing the manufacturing processes, including wastestreams. Rasmussen also testified, however, that he did not discuss where Atkinson disposed of its waste during 1971–1978, (Ras. dep. p. 38), he did not discuss the Mason County Landfill, (Ras 40, 84), and he did not discuss the issue of environmental liability or waste disposal in connection with assumption of liability agreement. (Ras 51–52, 56–57). The evidence is not sufficient to create an issue of fact as to whether Vermont American knew about the dumping of hazardous waste at the Mason County Landfill at the time of the asset purchase.

in this case the facts, viewed in the light most favorable to the government, are not legally sufficient to establish that Vermont American had knowledge of the potential CERCLA liability, or that it had any other "ties" with Atkinson that would justify holding it liable for Atkinson's CERCLA liability at the Mason County Landfill. There is no basis for finding successor liability on the part of Vermont American. Accordingly, Vermont American's motion for summary judgment will be granted.