Sylvia GOLDSTEIN, Plaintiff,

v.

Morton GARDNER and Thomson McKinnon Auchincloss & Kohlmeyer, Inc., Defendants.

No. 76 C 3351.

United States District Court, N. D. Illinois, E. D.

Jan. 27, 1978.

Fred I. Shandling, Ardell, Shandling, Greenberg & Fohrman, Chicago, Ill., for plaintiff.

Herbert C. DeYoung, DeYoung, Kelly, Arnold & Hastings, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

FLAUM, District Judge:

Before the court is defendant Thomson McKinnon Auchincloss Kohlmeyer, Inc.'s motion for summary judgment. Fed.R. Civ.P. 56. Plaintiff brings the instant action for violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 and various violations of the rules of the New York Stock Exchange, the American Stock Exchange and the National Association of Securities Dealers. Plaintiff also alleges one pendent claim for breaches of fiduciary duties. The gravamen of plaintiff's claim is that an employee of defendant's predecessor corporation "churned" plaintiff's investment account and made other material misstatements or omissions to the plaintiff in connection with the purchase or sale of securities. Inasmuch as there are substantial factual questions concerning certain issues in this case, it is apparent that defendant's motion for summary judgment must be denied.

Plaintiff's complaint challenges as unlawful purchases and sales between August 24, 1971 and June 1, 1972 by an employee of Halle & Steiglitz, Inc. [Halle] in behalf of the plaintiff.[1] Halle is not a party. The complaint enumerates the following additional facts. Plaintiff opened her account with Halle in July of 1971 by depositing $36,000 in cash. The complaint alleges that during the period between August 24, 1971 and June 1, 1972 the employee, Morton Gardner, "churned" her account generating approximately $1,592.69 in brokerage fees. The complaint charges that Gardner purchased high risk and speculative stock in direct violation of plaintiff's guidelines. On June 22, 1973, more than a year after the last stock purchase, Halle conveyed certain assets to the defendant.

Plaintiff argues that defendant assumed responsibility for Halle's actions when it

---

1. The employee, Morton Gardner, is a named defendant but has not been served with process.

received Halle's assets. Defendant submits a certificate from the Secretary of the State of Delaware showing that Halle is now a corporation in good standing incorporated under the laws of that state. It submits an affidavit showing that it never purchased securities in behalf of plaintiff and never had any dealings with plaintiff. Plaintiff offers no counter affidavit. The liability of defendant is therefore dependent on the nature and extent of Halle's transfer.

■ It is well settled that a transferee of assets is not under ordinary circumstances liable for the debts or obligations of its predecessor. *Leannais v. Cincinnati, Inc.*, 565 F.2d 437 (7th Cir. 1977); *Cyr v. B. Offen & Co.*, 501 F.2d 1145, 1152 (1st Cir. 1974); *Forest Laboratories, Inc. v. Pillsbury Co.*, 452 F.2d 621 (7th Cir. 1971); *Fehl v. S. W. C. Corp.*, 433 F.Supp. 939 (D.Del.1977); *Bazan v. Kux Machine Co.*, 358 F.Supp. 1250 (E.D.Wis.1973).

> There are, however, four well-recognized exceptions to the general rule under which liability may be imposed on a purchasing corporation: (1) when the purchasing corporation expressly or impliedly agreed to assume the selling corporation's liability; (2) when the transaction amounts to a consolidation or merger of the purchase and seller corporations; (3) when the purchaser corporation is merely a continuation of the seller corporation; or (4) when the transaction is entered into fraudulently to escape liability for such obligations.

*Leannais v. Cincinnati, Inc.*, 565 F.2d at 439.

The parties have not cited to the court, nor has the court discovered in its own research, a case where a successor corporation has been held liable for a violation of rule 10b–5. The cases cited above were diversity cases applying state law. However, the reasoning of those cases is helpful in determining the possible liability of the defendant here.

■ The defendant here can conceivably fall within exceptions 2 or 3 above. There is no allegation or suggestion by plaintiff that Halle's assets were transfer-

red to fraudulently escape liability. Therefore it does not fall within exception 4. Defendant does not fall within the first exception. Defendant can not avoid possible tort liability by a contractual limitation. It is settled that a buyer of assets can avoid implied assumption of liabilities by enumerating liabilities assumed and explicitly excluding assumption of liabilities not enumerated. *Klobendanz v. Joy Manufacturing Co.*, 288 F.Supp. 817, 822 (D.Col.1968). *Cf. Menacho v. Adamson United Co.*, 420 F.Supp. 128, 133 (D.N.J.1976), *citing McKee v. Harris-Seybold Co.*,109 N.J.Super. 555, 563, 264 A.2d 98, 102 (Super Ct.1970), *aff'd*, 118 N.J.Super. 480, 288 A.2d 585 (Super.Ct. App.Div.1972). Defendant points to a "Purchase Agreement" and "Transfer of Accounts Agreement" dated June 22, 1973 between Halle and defendant which contains disclaimers of liability. However, such disclaimers are insufficient to absolve the defendant of liability in this cause. "A disclaimer of tort liability will not prevent a corporation from having liability imposed upon it, if there has been either a de facto merger, or if the purchasing corporation is a mere continuation of the seller." *Menacho v. Adamson United Co.*, 420 F.Supp. at 133. Defendant's possible liability is therefore dependent upon the existence of a de facto merger or continuation.

■ Where one corporation is merged into another, with the first losing its existence, a merger takes place. However, "[w]hen the seller corporation retains its existence while parting with its assets, a 'de facto merger' may be found if the consideration given by the purchaser corporation be shares of its own stock." *Leannais v. Cincinnati, Inc.*, 565 F.2d at 439. The case law reflects factors other than receipt by the seller corporation of stock in exchange for assets. In ascertaining the existence of a de facto merger, courts look to the seller's continued existence after the sale, its continued exercise of its former business function and whether the seller corporation continued to possess assets to satisfy the demands of creditors. *See Bazan v. Kux Machine Co.*, 358 F.Supp. 1250 (E.D.Wis.1973);

*Klobendanz v. Joy Manufacturing Co.*, 288 F.Supp. 817, 822 (D.Colo.1968). *McKee v. Harris-Seybold Co.*, 109 N.J.Super. 555, 264 A.2d 98 (1970). *See also Fehl v. S. W. C. Corp.*, 433 F.Supp. 939 (D.Del.1977). Additionally, the court may consider whether the successor assumes liabilities necessary for uninterrupted continuation of business and whether the seller corporation ceases its ordinary business operations as soon as legally and practically possible after the sale. *Menacho v. Adamson United Co.*, 420 F.Supp. at 133.

The facts before the court are clearly insufficient to find a de facto merger. The purchase agreement does not reveal whether Halle received cash or stock for its assets. However, plaintiff points to a letter dated June 25, 1973 from Halle to its customers which states its intention to "combine" its brokerage offices with Thomson and which requests that certain transfer of account forms be returned to it. Additionally, the purchase agreement contains a covenant in which Halle agreed not to compete for a period of five years with the defendant. The purchase agreement and letter suggest that 18 of Halle's 25 offices were to be conveyed to the defendant under the agreement. Halle also agreed to mail, at defendant's expense, transfer of account forms to all of its customers. Defendant purchased furniture, fixtures, equipment, and leasehold improvements in specific offices, as well as certain quotation equipment. The defendant also agreed to pay utility charges and rent at certain of the offices at the date of agreement. Although defendant has submitted a certificate from the Secretary of the State of Delaware, the viability of that corporation is unknown.

There are substantial questions of fact concerning the existence of a de facto merger. The record is devoid of proof of what consideration Halle received for the sale. Although defendant has offered evidence showing the continued existence of Halle, the purchase agreement stipulated that Halle would not compete. There has been no showing whether Halle continues to possess substantial assets by which to satisfy the demands of its creditors. Additional-

ly, the assets conveyed appear to be essential to its business function. In sum, substantial issues of fact concerning a possible de facto merger yet remain to be resolved.

There is additionally a factual question on the mere continuation theory of successor liability. "The key element of a 'continuation' is a common identity of the officers, directors, and stockholders in the selling and purchasing corporations." *Leannais v. Cincinnati, Inc.*, 565 F.2d at 440; *Cyr v. B. Offen & Co.*, 501 F.2d 1145 (1st Cir. 1974); *Forest Laboratories, Inc. v. Pillsbury Co.*, 452 F.2d 621, 626 (7th Cir. 1971); *Holloway v. John E. Smith's Sons Company, Division of Hoban, Inc.*, 432 F.Supp. 454 (D.S.C. 1977); *National Dairy Products Corp. v. Borden Co.*, 363 F.Supp. 978 (E.D.Wis.1973). Since no facts have been demonstrated indicating a lack of such continuity, summary judgment on this issue is also inappropriate.

Inasmuch as the parties have submitted no evidence concerning the purchase or sale of the securities or any facts involving those transactions, summary judgment is also unwarranted on the issue of purchase or sale.

Accordingly, defendant's motion for summary judgment is denied.

It is so ordered.