**ALLIED CORPORATION,
et al., Plaintiffs,**

v.

**ACME SOLVENTS RECLAIMING,
INC., et al., Defendants.**

**No. 86 C 20377.**

United States District Court,
N.D. Illinois, W.D.

Jan. 26, 1993.

See also 691 F.Supp. 1100, 771 F.Supp. 219.

John Adams, Taylor, Miller, Sprowl, Hoffnagle & Merletti, Chicago, IL, for plaintiffs.

Peter J. Herzberg, Greenbaum, Rowe, Smith & Ravin, Woodbridge, NJ, for defendants.

## ORDER

REINHARD, District Judge.

### INTRODUCTION

Plaintiffs have sued, *inter alia*, defendant, Valspar Corporation (Valspar), individually and as successor in interest to Minnesota Paints, Speed–O–Laq Chemicals Corporation (Speed–O–Laq), Rocco Paint and Rockcote Paint Company. Valspar has filed a motion for summary judgment on the issue of whether it is a successor in interest to Speed–O–Laq.[1]

1. Valspar initially moved for summary judg- ment in its memorandum in opposition to plain-

## FACTS [2]

Speed–O–Laq was a manufacturer of private label paints, lacquers and industrial coatings. On November 30, 1973, Valspar entered into an asset purchase agreement with Speed–O–Laq. Included in this transaction were the land, buildings, improvements, machinery, equipment, fixtures, furniture and other tangible property located at Speed–O–Laq's production facility in St. Paul, Minnesota, and its storage facility in Menomonee Falls, Wisconsin. Also included in the sale were all current usable inventories of raw materials, packaging materials, finished products, all valid accounts and notes receivable as of the effective date resulting from Speed–O–Laq's prior sales, and all trade names and trademarks. Valspar also assumed Speed–O–Laq's obligations under contracts with the Housing Redevelopment Authority and the Roberts Construction Company.

The agreement also provided as follows: *Recital:* In connection with its business of manufacturing and selling paint and industrial coatings at various locations in the United States, Speed–O–Laq owns and operates plants at St. Paul, Minnesota, and Menomonee Falls, Wisconsin. The purpose of this Agreement is to enable Valspar to acquire these two plants and other specified assets and to carry on Speed–O–Laq's "business".

The above language notwithstanding, Valspar asserts that immediately after the sale it discontinued manufacturing lacquers. Valspar also contends that it discontinued the manufacture of industrial coatings within 10 days after the asset purchase. Valspar did, however, continue to manufacture the private label paints previously manufactured by Speed–O–Laq, but only after changes had been made to the paint formulas. Within 60 days after the asset purchase, Valspar closed the warehouse in Menomonee Falls, Wisconsin. Valspar closed the St. Paul facility on July 31, 1975.

At the time of the asset purchase, Speed–O–Laq had approximately 25 hourly employees and 12 salaried employees. Of these, four salaried employees and two hourly employees continued to work for Valspar.[3] Valspar and Speed–O–Laq did not share common officers, directors or incorporators. Speed–O–Laq was dissolved by court order on September 26, 1978.

## DISCUSSION

Summary judgment is appropriate where the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Poller v. Columbia Broadcasting Sys.,* 368 U.S. 464, 467, 82 S.Ct. 486, 487, 7 L.Ed.2d 458 (1962). A dispute about a material fact is "genuine" if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A mere "scintilla of evidence" is insufficient; the non-movant must offer evidence on which a jury could reasonably find for him. *Brownell v. Figel,* 950 F.2d 1285, 1289 (7th Cir.1991). The non-moving party must do more than raise a "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Co.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.

tiffs' motion for summary judgment. Subsequently, Valspar filed a separate motion for summary judgment. Although this procedure is not in conformance with Local Rule 12, the parties have proceeded by filing supplementary memoranda on the issue raised and, consequently, the court will overlook the lack of compliance with Local Rule 12.

**2.** Valspar has not filed a statement of uncontested facts, as required by Local Rule 12(M).

However, in the absence of plaintiffs' objection and in the interest of moving this case toward trial, the court will, nevertheless, entertain the motion.

**3.** The four salaried employees who continued to work for Valspar held the following positions: an office clerk; salesman; accountant; and plant manager. The two hourly employees were a machine laborer and a paint filler.

Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *United States v. McGaughey,* 977 F.2d 1067, 1073 (7th Cir.1992). As always, in deciding a motion for summary judgment, the court must read all facts in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513; *Richardson v. Penfold,* 839 F.2d 392, 394 (7th Cir.1988). Although plaintiffs generally argue that genuine issues of material fact are present, this court disagrees. Any disputes are legal arising from the facts before the court.

■ The parties agree that successor corporations can be held liable for environmental cleanup costs under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq. See, e.g., U.S. v. Mexico Feed and Seed Co.,* 980 F.2d 478, 486 (8th Cir.1992); *United States v. Carolina Transformer Co.,* 978 F.2d 832, 837 (4th Cir.1992); *Anspec Co. v. Johnson Controls, Inc.,* 922 F.2d 1240, 1245 (6th Cir. 1991); *Louisiana–Pacific Corp. v. Asarco, Inc.,* 909 F.2d 1260, 1262–63 (9th Cir.1990); *Smith Land & Improvement Corp. v. Celotex Corp.,* 851 F.2d 86 (3d Cir.1988), *cert. denied,* 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989). Under traditional rules of successor liability, asset purchasers are not liable as successors unless one of the following four exceptions applies:

(1) The purchasing corporation expressly or impliedly agrees to assume the liability;

(2) The transaction amounts to a *de facto* consolidation or merger;

(3) The purchasing corporation is merely a continuation of the selling corporation; or

(4) The transaction was fraudulently entered into in order to escape liability. *Mexico Feed,* 980 F.2d at 487; *Carolina Transformer,* 978 F.2d at 838; *Asarco,* 909 F.2d at 1263; *Bowen Eng'g v. Estate of Reeve,* 799 F.Supp. 467, 487 (D.N.J.1992); *Soo Line R. Co. v. B.J. Carney & Co.,* 797 F.Supp. 1472, 1482 (D.Minn.1992) (applying the-

ory to limited partnership's purchase of corporation); *Sylvester Bros. Dev. Co. v. Burlington Northern R.R.,* 772 F.Supp. 443, 447 (D.Minn.1990); *Goldstein v. Gardner,* 444 F.Supp. 581, 583 (N.D.Ill.1978) (quoting *Leannais v. Cincinnati, Inc.,* 565 F.2d 437, 439 (7th Cir.1977)). The parties are in agreement that the fourth exception is inapplicable here, as there are no allegations of fraud.

### Express or Implied Assumption of Liability

■ Valspar first contends that ¶ 4.07 of the purchase agreement expressly states that Valspar purchased specific assets of Speed–O–Laq, but did not assume *any* of Speed–O–Laq's liabilities. Plaintiffs argue that a close reading of ¶ 4.01 of the agreement reveals that Valspar explicitly accepted all risk of loss arising from the business after the purchase without any recourse against Speed–O–Laq.

Paragraphs 4.01 and 4.07 state as follows:

4.01 In general, all income, expenses and risk of loss of the business prior to the effective date shall be for Speed–O–Laq's account, and all income, expenses and risk of loss thereafter shall be for Valspar's account.

4.07 Except as expressly provided herein or in Exhibits hereto attached, Valspar is not assuming any of Speed–O–Laq's liabilities. In order to minimize the likelihood of any claim being made against Valspar by reason of Speed–O–Laq's liabilities, Speed–O–Laq will furnish to Valspar prior to the closing date a full list of all of its liabilities, including not only admitted obligations but also any amounts claimed in dispute, and Valspar shall have free access to Speed–O–Laq's books for this purpose. At the closing Valspar may require Speed–O–Laq to satisfy all known liabilities using proceeds of the sale hereunder for such purpose.

Plaintiffs argue that the disposal of waste material is a "risk of loss to the business" which Valspar expressly assumed liability

for. However, this court cannot agree that by generally accepting "risk of loss" occurring after the effective date of the transfer, Speed–O–Laq and Valspar contemplated that Valspar would assume all liability for CERCLA clean-up costs relating to Speed–O–Laq's pre-sale improper disposal of hazardous wastes.

■ Plaintiffs further contend that the indemnification procedure set out in ¶ 7.02 evidences Valspar's intent to assume liabilities arising before the purchase date, which were not disclosed to Valspar.[4] This argument lacks merit. The court reads ¶ 7.02 as providing one last safety mechanism in Valspar's favor. Paragraph 7.02 provides, in essence, that if, somehow, Valspar were held liable for a liability of Speed–O–Laq, it could seek indemnification from Speed–O–Laq. This hardly evidences an intent to assume any liability of Speed–O–Laq beyond that expressly provided in the agreement.

### De facto Consolidation or Merger

■ "A *de facto* merger occurs where one corporation is absorbed by another but without compliance with the statutory requirements for a merger.... Such a merger makes the surviving corporation liable for the claims against the predecessor corporation." *Arnold Graphics Indus., Inc. v. Independent Agent Ctr., Inc.*, 775 F.2d 38, 42 (2d Cir.1985).

Courts have recognized *de facto* mergers when:

(1) there is a continuation of the enterprise of the seller in terms of continuity of management, personnel, physical location, assets, and operations;

(2) there is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the corporation so that they become a constituent part of the purchasing corporation;

(3) the seller ceases operations, liquidates, and dissolves as soon as legally and practically possible; and

(4) the purchasing corporation assumes the obligations of the seller necessary for uninterrupted continuation of business operations.

*Asarco*, 909 F.2d at 1264; *Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 310 (3d Cir.), *cert. denied*, 474 U.S. 980, 106 S.Ct. 384, 88 L.Ed.2d 337 (1985); *Soo Line*, 797 F.Supp. at 1483; *Sylvester Bros.*, 772 F.Supp. at 447–48; *see also Goldstein*, 444 F.Supp. at 583–84.

Valspar argues that the continuity of shareholders factor is absolutely critical to a finding of *de facto* merger or consolidation. Plaintiffs, on the other hand, argue that continuity of shareholders is not necessary for a *de facto* merger; rather, it is merely one of several factors to apply.

It is uncontested that there is no continuity of shareholders, as contemplated in the second factor above. Several courts have held that continuity of shareholders is critical to a finding of *de facto* merger. *See, e.g., Asarco*, 909 F.2d at 1264–65; *Sylvester Bros.*, 772 F.Supp. at 448. While this authority is persuasive, the court finds it unnecessary to rely solely on this ground.

The facts of this case indicate that the first factor also has not been met. Most of the management and personnel of Speed–

---

4. Paragraph 7.02 provides as follows:

7.02 If subsequent to the closing date any of the representations and warranties contained in Section 5 hereof are determined to be untrue or if any of the undertakings by Speed–O–Laq hereunder have not been fulfilled, and if as a result Valspar sustains loss or damage, Valspar shall promptly give written notice of such claim to Speed–O–Laq and to the Escrow Agent. If within twenty days after such notice no objection has been filed with the Escrow Agent by Speed–O–Laq, the Escrow Agent shall remit the amount of such damages to Valspar. If Speed–

O–Laq makes timely objection of Valspar's claim of damages, the Escrow Agent will promptly notify Valspar of such objection. If Speed–O–Laq and Valspar are unable to reach a settlement of such claim within ten days after the twenty-day period has elapsed, either party may refer the dispute to arbitration[.] Nothing herein shall limit Valspar's right to any relief available at law or in equity against Speed–O–Laq or its distributees, and in the case of fraud or intentional misrepresentation from any person responsible therefor.

O–Laq were changed after the acquisition. Only six of the 37 Speed–O–Laq employees went to work for Valspar after the asset purchase. Moreover, the officers, directors and incorporators of the two companies were entirely different. Additionally, Valspar closed the storage facility in Menomonee Falls, discontinued manufacturing lacquers and, within 10 days, discontinued the manufacture of industrial coatings. Further, Valspar continued to manufacture private label paints, but only after reviewing and changing the formula. Accordingly, because Valspar has shown that there is no continuation of the enterprise (factor # 1) and no continuity of shareholders (factor # 2), this court finds that there was no *de facto* merger.

### Mere Continuation of Business

■ The "traditional" version of the "mere continuation" test emphasizes an "identity of officers, directors, and stock between the selling and purchasing corporations." *Mexico Feed*, 980 F.2d at 487 (quoting *Tucker v. Paxson Machine Co.*, 645 F.2d 620, 626 (8th Cir 1981)); *see also Carolina Transformer*, 978 F.2d at 838 (the continuity of stock, shareholders and directors is determinative); *Sylvester Bros.*, 772 F.Supp. at 448 (same); *Goldstein*, 444 F.Supp. at 584 (key element of a "continuation" is a common identity of the officers, directors, and stockholders in the selling and purchasing corporations). Additionally, courts have considered the continuity of investors and control and the adequacy of consideration in the transfer of assets. *Soo Line*, 797 F.Supp. at 1483. Valspar has set forth sufficient facts which indicate a lack of such continuity. Therefore, under the "traditional" test, Valspar cannot be considered to be a "mere continuation" of Speed–O–Laq.

■ Plaintiffs argue that the court should apply a broadened "mere continuation" theory commonly known as the "substantial continuity" or "continuity of enterprise" exception.[5] This exception, however, only applies when it has been shown that the asset purchaser has knowledge of the potential liability and responsibility for that liability. *See Mexico Feed*, 980 F.2d at 488.

As the court pointed out,

CERCLA is aimed at imposing clean up costs on the parties responsible for the creation or maintenance of hazardous waste sites. Therefore, in the CERCLA context, the imposition of successor liability under the "substantial continuation" test is justified by a showing that in substance, if not in form, the successor is a responsible party. The cases imposing "substantial continuation" successorship have correctly focused on preventing those responsible for the wastes from evading liability through the structure of subsequent transactions.

*Mexico Feed*, 980 F.2d at 488; *see also Carolina Transformer*, 978 F.2d at 838–39 ("Against the background of Carolina Transformer's emerging environmental problems[,]" former director and employee formed successor corporation); *Asarco*, 909 F.2d at 1265–66 ("substantial continuation" test inapplicable because purchaser had no actual notice of the seller's potential CERCLA liability and because seller's offending installation had ceased operating before the asset sale). Because plaintiffs have not set forth facts showing that Valspar had knowledge of the potential environmental liability or was in some way responsible for that liability, this court will not apply the "substantial continuation" test. Accordingly, the court finds that Valspar was not a "mere continuation" of Speed–O–Laq.

5. Among the factors to be considered under this test are whether the successor:
  (1) retains the same employees, supervisory personnel and the same production facilities in the same location;
  (2) continues production of the same products;
  (3) retains the same business name;
  (4) maintains the same assets and general business operations; and

  (5) holds itself out to the public as a continuation of the previous corporation.
  *Carolina Transformer*, 978 F.2d at 838; *Asarco*, 909 F.2d at 1265 n. 7 (citing *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 175 (5th Cir.1985)); *Sylvester Bros.*, 772 F.Supp. at 448 n. 7; *U.S. v. Distler*, 741 F.Supp. 637, 642–43 (W.D.Ky.1990).

**130**

## CONCLUSION

For the foregoing reasons, Valspar's motion for summary judgment on the issue of successor liability is granted.