**GOULD, INC., Plaintiffs,**

v.

**A & M BATTERY AND TIRE SERVICE, et. al., Defendants.**

**Civil Action No. 3:CV–91–1714.**

United States District Court,
M.D. Pennsylvania.

Jan. 15, 1997.

John Armstrong, Richard A. Barkasy, Dennis R. Suplee of Schnader, Harrison, Segal & Lewis, Philadelphia, PA, for plaintiffs.

Adam Schultz, Patricia Hoover of Devorsetz, Stinziano, Gilberti, Heintz & Smith, Syracuse, NY, for defendants.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

Presently before the Court is Defendant Climax Manufacturing Corp.'s (hereinafter "Climax Manufacturing") Motion for Partial Summary Judgment. (Doc. 1267). Climax Manufacturing claims that it is entitled to partial summary judgment on the issue that "[n]either [it] nor its wholly-owned subsidiary is a successor of Spevak's Waste Materials Corporation", (Doc. 1267, p. 2 ¶ 2), and therefore is not liable under the doctrines of corporate successor liability or de facto merger for clean up costs apportioned to Spevak Waste Material's alleged contribution of waste and/or batteries to the site prior to March 5, 1979. (Doc. 1268, p. 3). For the reasons as set forth *infra*, we shall deny Climax Manufacturing's Motion for Partial Summary Judgment.[1]

### FACTUAL AND PROCEDURAL BACKGROUND

The facts surrounding this litigation are well known to all parties involved. However, for the purposes of addressing the present motion, a brief recitation of the facts are necessary and are as follows.

The relationship between Spevak's Waste Materials Co., Inc. and the estate of Manuel Spevak is fundamental to the understanding of this Memorandum, the factual circumstances underlying the asset purchase by Climax Manufacturing, through its wholly owned subsidiary Spevak's Waste Materials Co., Inc. of the estate of Manuel Spevak follow.

Climax Manufacturing is a New York corporation which was incorporated in 1911. Climax Manufacturing is engaged in the business of "manufacturing paperboard and paperboard boxes for the retail sale industry." (Doc. 1269, p. 2, ¶ 3). Spevak's Waste Materials Company, Inc. was incorporated on February 23, 1979. The sole shareholder of Spevak's Waste Materials, Co. Inc. is Climax Manufacturing. Spevak's Waste Materials

---

1. We state at the onset that the Third Circuit has held that "Congress intended to impose successor liability on corporations which either have merged with or have consolidated with a corporation that is a responsible party as defined in [CERCLA]." *Smith Land & Improvement Corp. v. Celotex Corp.,* 851 F.2d 86, 92 (3d. Cir.1988), *cert. denied,* 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989).

Company, Inc. is a subsidiary corporation of Climax Manufacturing. Spevak's Waste Materials Co., Inc. was incorporated for the purpose of, *inter alia*, "to buy, sell and generally deal in waste papers, rags, cloth, and old iron, copper, brass, and every other kind of metal." (Doc. 1269, App. C, ¶ 2(a)).

On February 1, 1979, Climax Manufacturing entered into a purchase agreement with the estate of Manuel Spevak to purchase specific assets of Spevak's and the estate's related entities. Such entities of the estate included Spevak's Waste Paper Co., Spevak's Waste Materials Corp. and Spevaks's Leasing Corp. (referred hereinafter collectively as "Spevak's"). The main corporate entity Climax Manufacturing claims to have been interested in was Spevak's Waste Paper Co., (Doc. 1269, p. 3, ¶¶ 6, 7), as it was in search of a supply of recyclable paper. (Doc. 1269, pp. 2–3, ¶¶ 5–6). However, in order to acquire Spevak's Waste Paper Company, Climax Manufacturing had to collectively purchase all of the above mentioned entities as sort of a package deal.

Part of Spevak's business included selling junk batteries (Doc. 1325, p. 2), as the ledgers of the Marjol Battery Company reveal that Spevak's (which includes the entity named Spevak's Waste Materials Corp.) sold in excess of 1.8 million pounds of batteries to Marjol from 1969 to 1979. (Doc. 1325, p. 2). Spevak's Waste Materials Company, Inc. (the corporation formed by Climax Manufacturing) knew that Spevak's Waste Materials Corp.[2] sold batteries (Doc. 1325, Exh. A, p. 30), even though Spevak's Waste Materials Corp. did not inform it so at the time of closing. (Doc. 1325, Exh. A, p. 31). Furthermore, Spevak's Waste Material Company, Inc. had a general awareness that the Marjol Battery plant was a customer of Spevak's Waste Materials Corp. "at some point in time." (Doc. 1325, Exh. A, p. 40).

On March 1, 1979, Spevak's Waste Materials Company, Inc. accepted an assignment of the purchase agreement entered into by Climax Manufacturing and Spevak's. (Doc. 1269, p. 5, ¶ 13). This assignment took place prior to the closing of the deal between Climax Manufacturing and Spevak's. The purchase agreement was closed on March 5, 1979 between Spevak's and Spevak's Waste Materials, Co. Inc. Climax Manufacturing claims that "[a]t the date of the closing, neither [it] nor [Spevak's Waste Materials] had ever been involved in the secondary metal recycling industry and that neither were apprised of the likelihood of such a liability by the seller." (Doc. 1268, p. 2). Climax Manufacturing also points to the fact that CERCLA was not enacted until two (2) years after the transaction.

After Spevak's Waste Materials Co., Inc. closed on the deal and purchased Spevak's, most of the personnel at Spevak's became employees of Spevak's Waste Materials Co. Inc. (Doc. 1325, Exh. A pp. 22–3). There was no interruption in Spevak's business after Spevak's Waste Materials Co., Inc. bought Spevak's. (Doc. 1325, Exh. A p 24). It appears that the name of Spevak's was retained as well once the business continued. At the time of the closing of the sale, Spevak's Waste Materials, Co. Inc. knew that Spevak's was in the business of selling batteries.[3] (Doc. 1325, Exh. A p. 30). Accounts receivable of Spevak's were turned over to Spevak's Waste Materials Co., Inc. at the time of closing. (Doc. 1325, Exh. A p. 31).

## DISCUSSION

### Standard of Review

Pursuant to Fed.R.Civ.P. 56(c), a motion for summary judgment will only be granted if there is no genuine issue of material fact and if the moving party is entitled to relief as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505,

---

2. Although the correct name of the corporate entity in question is Spevak's Waste Materials Corp., during depositions, the parties referred to this corporate entity as Spevak's Waste Materials Company. Throughout this Memorandum, we correctly refer to the corporate entity as Spevak's Waste Materials Corp., even though the citation to the record may indicate otherwise.

3. The parties disagree as to whether or not this fact is relevant in determining whether corporate successor liability attaches to Climax Manufacturing. Although we discuss this fact *infra*, it is only being mentioned at this point in the factual recitation in order for the reader to understand the form and extent of the corporate transaction.

2509–10, 91 L.Ed.2d 202 (1986). A fact is "material" if proof of its existence or nonexistence would effect the outcome of the lawsuit under the applicable law in the case. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. An issue of material fact is "genuine" if the evidence is such that a reasonable jury might return a verdict for the non-moving party. *Hankins v. Temple University,* 829 F.2d 437, 440 (3d Cir.1987).

In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company,* 862 F.2d 56, 59 (3d Cir. 1988). A moving party is entitled to a judgment as a matter of law if the nonmoving party does not make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

Once the moving party has satisfied its burden of identifying evidence which demonstrates an absence of a genuine issue of material fact, *Childers v. Joseph,* 842 F.2d 689, 694 (3d Cir.1988), the nonmoving party is required by Fed.R.Civ.P. 56(e) to go beyond the pleadings by way of affidavits, depositions or answers to interrogatories in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. When Rule 56(e) shifts the burden of proof to the nonmoving party, that party must proffer evidence to show the existence of every element essential to its case which it bears the burden of proving at trial. *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.,* 812 F.2d 141, 144 (3d Cir.1987).

When reviewing a motion for summary judgment, the court must decide whether or not there is a genuine issue of material fact which must be resolved at trial or whether the evidence is so one-sided that one party will prevail over the other. *Groff v. Continental Insurance Co.,* 741 F.Supp. 541 (E.D.Pa.1990). "Where factual controversies exist, disputes over material facts that might affect the outcome of the suit under the governing law will probably preclude the entry of summary judgment." *Metro Trans-portation Co. v. North Star Reinsurance Co.,* 912 F.2d 672, 678 (3d. Cir.1990).

**The Issue of Corporate Successor Liability**

█ The basic tenets of corporate law dictate that in an asset purchase scenario, the asset purchaser is not considered to be a corporate successor to its predecessor *unless:* (1) the purchasing corporation expressly or impliedly agrees to assume the liabilities of the other corporation; (2) the transaction amounts to a "de facto" merger; (3) the purchasing corporation is merely continuing the other corporation's business; or (4) the transaction is a fraudulent transaction structured to evade liability. *United States v. Mexico Feed and Seed Co., Inc.,* 980 F.2d 478, 487 (8th Cir.1992); *United States v. Distler,* 741 F.Supp. 637, 640 (W.D.Ky.1990). All the parties agree as to this basic tenet. The disagreement occurs when scenario number three (3) is at issue: when the purchasing corporation is merely continuing the other corporation's business. This scenario has spawned the "mere continuation" doctrine.

█ "The traditional rule with regard to the 'mere continuation' exception is that a corporation is not to be considered the continuation of a predecessor unless, after the transfer of assets, only one corporation remains, and there is an identity of stock, stockholders, and directors between the two corporations." *United States v. Carolina Transformer Co.,* 978 F.2d 832, 838 (4th Cir. 1992) (citation omitted). In the present case, Climax Manufacturing would not be a successor corporation under the mere continuation doctrine, as there was no continuation of stockholders between Spevak's Waste Materials Co., Inc. and Spevak's, nor was there any overlap of stock ownership among the corporations.

Climax Manufacturing, anticipating Gould's argument, argues that in addition to the fact that it is not liable under the mere continuation doctrine, it also is not liable under the expanded test of the mere continuation doctrine, that being the "substantial continuity" test, or the "continuity of enterprise" theory.

■ Under the continuity of enterprise theory, courts take into consideration several factors in determining whether a corporation is a successor to another. Such relevant factors include:

(1) retention of the same employees;

(2) retention of the same supervisory personnel;

(3) retention of the same production facilities in the same location;

(4) retention of the same name;

(5) production of the same product;

(6) continuity of assets;

(7) continuity of general business operations; and

(8) whether the successor holds itself out as the continuation of the previous enterprise.

*Carolina Transformer Co.,* 978 F.2d at 838.

■ "[T]he policy behind applying the more flexible continuity of enterprise expansion to the traditional exceptions to successor liability is to preclude CERCLA-responsible parties from using corporate formalities to escape liability." *Elf Atochem North America v. United States,* 908 F.Supp. 275, 282 (E.D.Pa.1995) (internal citations and quotations omitted). "[It] should be applied only when the application of traditional corporate law principles would frustrate the remedial goals of CERCLA, namely to have *responsible* parties contribute to cleanup costs." *United States v. Atlas Minerals and Chemicals, Inc.,* 824 F.Supp. 46, 50 (E.D.Pa.1993) (emphasis in original).

Climax Manufacturing contends that the continuity of enterprise theory does not apply in this case, as it did not have any prior notice of the potential CERCLA liability and that CERCLA was not enacted at the time of the corporate transactions. Counsel for Climax Manufacturing cites several cases which have considered knowledge of environmental liability to be an element necessary for corporate successor liability to attach under the continuity of enterprise theory.

■ We believe that the continuity of enterprise theory is the more appropriate theory for meeting the goals of CERCLA of holding responsible parties liable for cleanup costs. While we agree with our fellow courts as to the purpose behind the continuity of enterprise theory and that this theory does not apply unless the facts warrant the application thereto, we disagree that knowledge of potential liability is necessary or is a factor that must be present in order for the continuity of enterprise theory, or corporate successor liability for that matter, to apply. We believe that interpreting present case law as requiring knowledge of potential liability is incorrect in light of the goals and purpose of CERLA. *Smith Land & Improvement Corp. v. Celotex Corp.,* 851 F.2d 86 (3d Cir. 1988), *cert. denied,* 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989). "CERCLA is entitled to a construction that advances its primary goals. Because the substantial continuity test is more consistent with the Act's goals, it is superior to the older and more flexible 'identity' rule." *B.F. Goodrich v. Betkoski,* 99 F.3d 505 (2nd Cir.1996). While we join the Second Circuit in its decision to adopt the substantial continuity, or continuity of enterprise theory "as the appropriate test for successor liability under CERCLA", *Id.* at 519, we disagree with other courts' interpretations of this theory as requiring knowledge of potential CERCLA liability on the part of the successor corporation for the theory to attach.

In *Mexico Feed and Seed, supra,* the Eighth Circuit traced the history of successor corporate liability and the continuity of enterprise test[4], starting with the United States Supreme Court case of *Golden State Bottling Co. v. NLRB,* 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973). The Court in *Golden State Bottling* had to determine whether a purchasing corporation which knew of past unremedied unfair labor practices of its predecessor was liable under the National Labor Relations Act for such unfair trade practices. The *Golden State Bottling* court held that "a bona fide purchaser, acquiring, with knowledge that the wrong re-

---

4. The *Mexico Feed and Seed* court refers to the continuity of enterprise theory as the "substantial continuity" test.

mains unremedied, the employing enterprise which was the locus of the unfair labor practice, may be considered in privity with its predecessor. . . ." *Golden State Bottling,* 414 U.S. at 180, 94 S.Ct. at 423. The National Labor Relations Act is a statute which requires some level of knowledge of wrongdoing before liability is imposed. CERCLA is a strict liability statute.

In *Louisiana–Pacific Corp. v. Asarco, Inc.,* 909 F.2d 1260 (9th Cir.1990), the Ninth Circuit determined that the continuity of enterprise theory did not apply to a successor corporation because there was no actual notice of the predecessor's potential CERCLA liability and that the corporation did not continue the predecessor's business. Climax Manufacturing reads the *Asarco* case to stand for the proposition that knowledge of potential CERCLA liability must be present in order for successor corporate liability to attach. We disagree after a thorough reading of the case.

The *Asarco* court was asked to extend its decision of adopting the continuity of enterprise theory to CERCLA cases, as it did in the FIFRA[5] case of *Oner, II. Inc. v. United States Environmental Protection Agency,* 597 F.2d 184 (9th Cir.1979). The *Asarco* court declined to do so, basing its decision on two facts: "Two key facts distinguish the circumstances surrounding the transfer of assets in this case from *Oner II.* First, L–Bar did not have actual notice of IMP's potential CERCLA liability. . . . Second, **and perhaps more importantly, L–Bar did not continue IMP's slag business.**" *Asarco,* 909 F.2d at 1265–66 (emphasis added). Our reading of *Asarco* leads us to believe that the latter fact, which correlates to an established factor in the continuity of enterprise theory, was given more weight than the former fact, which is not an established factor.

In *Atlas, supra,* Judge Cahn of the Eastern District of Pennsylvania interpreted several cases dealing with the continuity of enterprise theory as requiring notice or knowledge of potential CERCLA liability. In addressing the *Mexico Feed and Seed* decision, the *Atlas* court interpreted an of-

ten-cited part of the *Mexico Feed and Seed* decision, as reasoning that the continuity of enterprise theory is only to be applied in situations involving knowledge:

'Unlike *Distler* and *Carolina Transformer* . . . the asset purchase transaction was between two competitors, not a cozy deal where responsible parties merely changed the form of ownership yet in substance retained the same name, nor one where the actual managers of a corporation took over its ownership with full knowledge of its past practices. Nor is this a case where a purchasing corporation either in collusion with the seller, or independently, brought only 'clean' assets, and knowingly left 'dirty assets' behind with an insufficient asset pool to cover any potential liability. Nor is this a case of willful blindness. . . .' Under this interpretation, the 'continuity of enterprise' exception is designed to prevent strategic behavior by corporate actors who know of or anticipate CERCLA problems.

*Atlas,* 824 F Supp. at 50 (*quoting Mexico Feed and Seed,* 980 F.2d at 489–90).

Following the *Atlas* decision, Judge Giles of the Eastern District of Pennsylvania subsequently held that it was not "inclined to limit the application of the [continuity of enterprise theory] to occasions when the purchaser has knowledge or actual notice of the seller's CERCLA liability. . . ." *Atlantic Richfield Co. v. Blosenski,* 847 F.Supp. 1261, 1287 n. 26 (E.D.Pa.1994). However, the court continued by stating that "it may be proper to reserve [the continuity of enterprise theory] for a purchaser who should have known after a reasonable investigation of the seller's potential liability. . . . This would be consistent with CERCLA's 'innocent landowner' defense, which is intended to prevent innocent purchasers of land from being held liable under CERCLA. . . ." *Id.* Any court should be hesitant in harmonizing the decision to impose successor corporate liability with CERCLA's innocent landowner defense, for to do so would, in our opinion, thwart the basic goals of CERCLA and the simple reasoning behind the continuity of

5. The Federal Insecticide, Fungicide, and Roden-    ticide Act, 7 U.S.C. §§ 136–136w.

enterprise theory; that being holding liable corporations who structure their corporate matters in such a way that they can get all of the benefit with none of the liability or responsibility. *See e.g. Smith Land & Improvement Corp. v. Celotex Corp.,* 851 F.2d 86, 92 (3d. Cir.1988), *cert. denied,* 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989); *B.F. Goodrich v. Betkoski,* 99 F.3d 505, 519 (2nd Cir.1996).

In *Allied Corp. v. Acme Solvents Reclaiming, Inc.,* 812 F.Supp. 124 (N.D.Ill.1993), the court did not apply the continuity of enterprise theory to the facts in that case, as the plaintiffs failed to show that the corporation knew of the potential environmental liability or was responsible in some way for such liability. *Allied,* 812 F.Supp. at 129. The *Allied* court reached this decision by interpreting the *Mexico Feed and Seed* decision as requiring knowledge of potential liability. *Id.*

We disagree with these interpretations of *Mexico Feed and Seed.* Courts have repeatedly held that the purpose of applying the continuity of enterprise theory is to support the goals of CERCLA and to hold responsible parties liable, not to hold only those who knew of the potential problems liable. Furthermore, the purpose behind the continuity of enterprise theory is to uphold the goals of CERCLA, and "is justified by a showing that in substance, if not in form, the successor is a responsible party." *United States v. Mexico Feed and Seed Co., Inc.,* 980 F.2d 478, 488 (8th Cir.1992).

We are of the opinion that the reason for such misinterpretations of the *Mexico Feed and Seed* decision is because in the majority of cases where the continuity of enterprise theory has been applied, the parties have been intertwined at some level or another. In such situations, it is easy to find that the parties knew of such liability because of the closeness among the corporations. If the factors of the continuity of enterprise theory are present, then, in substance, the corporation is continuing the business of its predecessor, for it is holding itself out to be the same corporation, and the end result is merely the same corporation wearing a new hat under the guise of the successor corporation.

While we state that notice or knowledge is *not* a requisite factor for corporate successor liability to attach through the continuity of enterprise theory, we are not stating that if it does exist, it should be ignored. The facts may, when taken in the totality of the circumstances, create the appearance of knowledge or notice, due to the factors of the continuity of enterprise theory. It is easy to infer notice or knowledge, in a case such as the one we consider here, when the successor holds itself out as the continuation of the previous enterprise by retaining the same employees, the same name, the same supervisory personnel, the same production facilities in the same location, produces the same product, maintains a continuity of assets and the general business operations. But that does not mean that in its absence the successor will not be liable.[6]

In *United States v. Peirce,* 1995 WL 356017 (N.D.N.Y.1995), the court rejected the notion that the continuity of enterprise theory requires notice:

[I]t is noted that this Court rejects the reasoning behind [*Atlas*] and [*Allied*] decisions. In those cases, the district courts determined that the 'continuity of enterprise' exception to successor liability is applicable only when there is knowledge of potential liabilities by the purchasing corporation, or when the purchasing corporation has substantial ties to the selling corporation. As stated earlier, these are not determinative factors in deciding whether to apply the continuity of enterprise theory but, rather, are merely additional factors to be considered by the court together with the eight factors listed in *Carolina Transformers.* The [*Allied*] and the [*Atlas*] decisions are flawed because both courts rely on a misunderstanding of *Mexico Feed and Seed* decision. Both courts concluded that *Mexico Feed and Seed* stands for the proposition that the more expansive continuity of enterprise theory

---

6. For example, the court in *Hunt's Generator Committee v. Babcock & Wilcox Co.,* 863 F.Supp. 879, 884 (E.D.Wis.1994), stated that continuity of enterprise could still be applicable even "without actual notice of potential liability."

should have application only when certain factors such as knowledge or substantial ties are present. However, a careful review of *Mexico Feed and Seed* brings us to a contrary conclusion.... *Mexico Feed and Seed* does not stand for the proposition that the continuity of enterprise test has application only in limited circumstances, but rather, that the test does have application in asset purchases cases irrespective of the lack of knowledge or substantial ties elements. It is important to note that these factors did indeed play a vital role in the court's determination, but it is also important to note that such factors were not dispositive in the court's determination in finding no liability.

*Peirce,* 1995 WL 356017 at * *2, 3.

We find this reasoning to be correct, and agree with the *Peirce* court in its interpretation of *Mexico Feed and Seed.* Similarly, in *State of Washington v. United States,* 930 F.Supp. 474, 480 (W.D.Wash.1996), the court held that "the substantial continuity or continuity of enterprise theory is an appropriate test for successor liability in CERCLA cases; that it should be interpreted in light of the objectives of CERCLA; and that resolution of the issue depends on a thoughtful analysis in each case." The *Washington* court further commented on the issue of notice, and stated that any analysis of notice, or lack thereof, "should not be binding on [the] issue." *Id.* at 481. "CERCLA was enacted to remedy sites contaminated with hazardous waste from past practices. The idea that a successor must have knowledge of a potential for CERCLA liability before liability may attach to it, is illogical considering CERCLA's policies of strict liability and retroactive liability." *Id.* at 482.

■ Turning now to the parties at hand, we find that Climax Manufacturing and its wholly-owned subsidiary Spevak's Waste Materials Co., Inc. is the corporate successor to Spevak's.

The facts reveal that most of the personnel at Spevak's became employees of Spevak's Waste Materials Co. Inc. (Doc. 1325, Exh. A pp. 22–3). Spevak's business was not interrupted after Spevak's Waste Materials Co., Inc. bought it. (Doc. 1325, Exh. A p 24). Spevak's name was retained once the business continued, as Spevak's Waste Material Co., Inc. All assets in Spevak's accounts receivable were transferred and continued under Spevak's Waste Materials Co., Inc. after the closing. (Doc. 1325, Exh. A p. 31).

The fact that Spevak's was acquired for only one of its four subdivisions is not dispositive. Collectively, Spevak's disposed of the batteries, and collectively, Spevak's was acquired by Climax Manufacturing through its subsidiary, Spevak's Waste Materials Co., Inc.

In the CERCLA context, the imposition of successor liability under the [continuity of enterprise theory] is justified by a showing that in substance, if not in form, the successor is a responsible party. The cases imposing substantial continuation successorship have correctly focused on preventing those responsible for the wastes from evading liability through the structure of subsequent transactions.

*United States v. Mexico Feed and Seed Co., Inc.,* 980 F.2d 478, 488 (8th Cir.1992).

We note that "[w]hether a corporation is a 'substantial continuation' of another is a legal, not factual question." *Mexico Feed and Seed,* 980 F.2d at 489, n. 13. We have reviewed the history of corporate successor liability and the continuity of enterprise theory, while keeping in mind the goals of CERCLA. We have also thoroughly reviewed the parties' pleadings and the facts surrounding the corporate transaction as well as the corporate structure and relationship between Climax Manufacturing and Spevak's Waste Materials Co., Inc. After having done so, we find as a matter of law that Climax Manufacturing through its subsidiary Spevak's Waste Materials Co., Inc. is the successor to Spevak's and as such is liable for any of Spevak's shipments of spent batteries to the site prior to March 5, 1979 (the date of the corporate transaction).[7,8]

---

7. This liability is, naturally, in addition to any liability which is incurred after that date as well.

8. The parties also briefed the possibility of liability under the doctrines of de facto merger and equitable apportionment. Since we find that Cli-

## CONCLUSION

Based upon the foregoing reasons, we shall deny the motion for partial summary judgment filed on behalf of defendant Climax Manufacturing (Doc. 1267). An appropriate Order is attached.

### *ORDER*

AND NOW, THIS 15th DAY OF JANUARY, 1997, IT IS HEREBY ORDERED THAT:

1. The motion for partial summary judgment filed on behalf of defendant Climax Manufacturing (Doc. 1267) is DENIED.

2. Through this Memorandum and Order, we have made the determination that the continuity of enterprise theory is the applicable doctrine in CERCLA cleanup cases, and that notice is not a requisite element of that theory. We have also determined that the facts in this case warrant the finding that Climax Manufacturing through its subsidiary, Spevaks' Waste Materials Co., Inc. is a successor corporation to Spevak's.

3. This Order disposes of Document number 1267.

4. The CLERK of COURT is DIRECTED to MARK the DOCKET SHEET ACCORDINGLY.

max Manufacturing is liable under the continuity of enterprise theory, we needn't address these

theories of liability.